Bryan J. Vogel (*pro hac vice*)
BVogel@RobinsKaplan.com
Danielle Rosenthal (*pro hac vice*)
DRosenthal@RobinsKaplan.com
Miles Finn (*pro hac vice*)
MFinn@RobinsKaplan.com
**ROBINS KAPLAN LLP**
399 Park Avenue, Suite 3600
New York, NY 10022-4690
Tel.: (212) 980-7400
Fax: (212) 980-7499

Li Zhu (Bar No. 302210)
LZhu@RobinsKaplan.com
**ROBINS KAPLAN LLP**
2440 W El Camino Real, Suite 100
Mountain View, CA 94040
Tel.: (650) 784-4040
Fax: (650) 784-4041

Cyrus A. Morton (*pro hac vice*)
CMorton@RobinsKaplan.com
William E. Manske (*pro hac vice*)
WManske@RobinsKaplan.com
Emily J. Tremblay (*pro hac vice*)
ETremblay@RobinsKaplan.com
Maximilian F. Hall (*pro hac vice*)
MHall@RobinsKaplan.com
**ROBINS KAPLAN LLP**
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Tel.: (612) 349-8500
Fax: (612) 339-4181

Attorneys for Plaintiff Celgard, LLC

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Celgard, LLC,<br><br>Plaintiff,<br><br>v.<br><br>Targray Technology International, Inc.,<br><br>Defendant. | Case No. 5:19-cv-02401-VKD<br><br>**FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Celgard, LLC ("Celgard") for its First Amended Complaint for patent infringement against Defendant Targray Technology International, Inc. ("Targray"), alleges as follows:

**NATURE OF THE ACTION**

1. This is an action for patent infringement of United States Patent No. 6,432,586, ("the '586 patent"), entitled "Separator for a High Energy Rechargeable Lithium Battery," and United States Patent No. 6,692,867 ("the '867 patent"), entitled "Battery Separator-Pin Removal" (collectively, the "Asserted Patents"), under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq*., and seeking damages, injunctive relief, and other relief as appropriate under 35 U.S.C. § 281, *et seq*. A true and correct copy of the '586 patent is attached hereto as **Exhibit A**. A true and correct copy of the '867 patent is attached hereto as **Exhibit B**.

**THE PARTIES**

2. Celgard is a limited liability company organized and existing under the laws of Delaware, with its principal place of business located in Charlotte, North Carolina. Celgard is directly owned by Polypore International, LP, which is headquartered in Charlotte, North Carolina, and is indirectly owned by Asahi Kasei Corporation, which is headquartered in Japan.

3. Celgard is a global leader in the development and production of specialty microporous membranes, including separators used in lithium-ion batteries for consumer electronic devices and electric vehicles. Celgard's leading market position is attributable, in part, to its development, maintenance, and enforcement of its intellectual property, including the '586 patent and '867 patent. Indeed, in presentations to customers, potential customers, and industry audiences, Celgard frequently lists the Asserted Patents, ceramic coated separators, and/or dry process separator technology as a major part of its success in the separator market.

4. On information and belief, Targray is a corporation organized and existing under the laws of Canada, with its principal place of business in Kirkland, Quebec, Canada. Targray is registered to do business in the State of California. Its principal office in the State of California is 27665 Forbes Road, Suite 101, Laguna Niguel, CA 92677.

5. Targray is engaged in the business of developing, offering to sell, and selling products to companies and institutions throughout the United States, including the State of

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

California. Targray competes with Celgard in the battery separator market. As detailed below, Targray sells certain ceramic coated separator products that directly infringe the ’586 patent.

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the Patent Laws of the United States, 35 U.S.C. §§ 271 and 281-285.

7. Venue is proper in this judicial district for Targray under 28 U.S.C. § 1391(c) because Targray is a Canadian (foreign) corporation not resident in the United States and it may be sued in any judicial district under 28 U.S.C. § 1391(c)(3).

8. This Court may exercise personal jurisdiction over Targray because Targray is registered to do business in the State of California and, on information and belief, has substantial business in California and has purposefully availed itself of the rights and privileges of conducting business in California.

9. Targray has infringed and/or continues to infringe the Asserted Patents, identified below, in this judicial district.

**TECHNOLOGY BACKGROUND**

10. Lithium batteries are typically constructed with a thin porous insulating film (the separator) that allows the battery to operate but prevents the electrodes (cathode and anode) from contacting each other. When the battery is discharged, positively charged lithium ions flow from the anode, through the separator, to the cathode. This process leaves a negative charge of electrons on the anode. When charging, the flow is reversed. In a rechargeable (secondary) lithium battery, the charge and discharge states are repeated during use. The process of charging and discharging the battery is referred to as one cycle.

11. Lithium batteries present certain unique safety challenges due to their chemical design and composition. One such challenge is lithium dendrite growth—the irregular growth of a metal on an electrode during charging or discharging. Over repetitive charge-discharge cycles, dendrites may grow out from the electrode’s surface in a needle-like structure. As the battery is cycled further, the dendrite may continue to grow, penetrating the separator and making direct,

physical contact with the opposite electrode. When such contact is made, an electrical short circuit of the battery may occur. This may cause the battery to malfunction. In certain scenarios, it may cause the battery's internal temperature to rise quickly and uncontrollably, leading to thermal runaway and catastrophic failure.

12. The battery industry has long identified dendrite growth and associated electronic shorting as a significant safety issue. Prior to the invention disclosed in the '586 patent, however, solutions to the problem were varied and achieved mixed results.

13. In at least 2000, Celgard research scientist Dr. Zhengming Zhang invented the separator technology described and claimed in the '586 patent to address safety and durability problems in lithium batteries. Dr. Zhang's separator has (1) a ceramic composite layer (or coating) including a mixture of inorganic particles and a matrix material, and (2) a polyolefinic microporous layer. The claimed separator's ceramic composite layer combines inorganic particles within a matrix material to create a composite layer adapted to at least block dendrite growth and prevent electrical shorts, improving the safety and commercialization of high-energy lithium batteries. The claimed separator's polyolefinic microporous layer is adapted to block ionic flow between the anode and cathode at an elevated temperature such as during thermal runaway. This shutdown functionality further improves battery safety.

14. Today, ceramic coated separators are increasingly common in the rechargeable (often large format) lithium batteries used in electric vehicles and for other high-power applications. Much of the plug-in electric vehicle market in the U.S. has adopted ceramic coated separator technology. As the electric vehicle market continues to grow, an increasing percentage of manufacturers have turned to ceramic coated separators as a means to improve battery safety, battery cycle life, and vehicle driving range.

15. Another of Celgard's inventions is an innovative way to remove a pin from a separator during battery assembly. In the manufacture of high energy, lightweight batteries, for example, secondary lithium batteries, the battery assembly, i.e., an anode tape and a cathode tape sandwiching a separator tape, is wound about one or more pins (or cores or mandrels). To begin winding of the assembly, the separator tape is taken up on the pin, and then the anode and cathode

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

tapes are fed to the pin. Upon completion of the winding, the battery assembly is removed (or withdrawn) from the pin. If the assembly (i.e., the separator tape) sticks on the pin during withdrawal, the assembly "telescopes" and must be rejected. Such rejects increase the cost of the battery manufacturing process. In response to this problem, Celgard invented a separator having improved pin removal properties, i.e., separators that will not cause telescoping when the battery assembly is removed from the pin. This inventive separator is claimed in the '867 patent.

**U.S. PATENT NO. 6,432,586**

16. Celgard is the owner by assignment of all right, title, and interest in and to the '586 patent, including the right to sue for past damages and injunctive relief. The '586 patent was duly and legally issued by the United States Patent and Trademark Office on August 13, 2002, and is active as to Claim 12.

17. On information and belief, Celgard's enforcement of the '586 patent against infringing parties is well known within the battery and battery materials industry.

18. In 2013, Celgard filed suit against Sumitomo Chemical Co., Ltd., in the United States District Court for the Western District of North Carolina for infringement of the '586 patent. The suit was resolved pursuant to agreement of the parties. The suit and its resolution were subject to national, industry-focused media coverage as shown in **Exhibit C** attached hereto.

19. In 2014, Celgard filed a patent infringement suit against LG Chem Ltd. and LG Chem America, Inc. (collectively, "LG Chem") in the United States District Court for the Western District of North Carolina for infringement of the '586 patent. The suit was resolved pursuant to agreement of the parties after significant district court litigation and patent office proceedings. The suit and its resolution were subject to national, industry-focused media coverage as shown in **Exhibit D** attached hereto.

20. In 2014, Celgard filed suit against SK Innovation Co., Ltd. ("SK Innovation") in the United States District Court for the Western District of North Carolina for infringement of the '586 patent. The suit was resolved pursuant to agreement of the parties after significant district court litigation and patent office proceedings. The suit and its resolution were subject to national, industry-focused media coverage as shown in **Exhibit E** attached hereto.

21. In December 2018, Celgard filed a patent infringement suit against MTI Corporation in the United States District Court for the Northern District of California for infringement of the ’586 patent. *Celgard, LLC v. MTI Corporation*, No. 5:18-cv-07441-VKD (N.D. Cal. filed Dec. 11, 2018). The suit against MTI is ongoing in this Court and has been the subject of national and international industry-focused media coverage. *See, e.g.*, **Exhibit F**.

22. The validity of Claim 12 of the ’586 patent was challenged by both LG Chem and SK Innovation. The Patent Trial and Appeal Board (PTAB) rejected all challenges to Claim 12, which remains valid and enforceable.

**U.S. PATENT NO. 6,692,867**

23. Celgard is the owner by assignment of all right, title, and interest in and to the ’867 patent, including the right to sue for past damages and injunctive relief. The ’867 patent was duly and legally issued by the United States Patent and Trademark Office on February 17, 2004, with all claims active.

**TARGRAY’S INFRINGING CONDUCT**

24. Targray represents itself as a global supplier of “battery electrodes, anode materials (graphite, graphene, LTO), cathode materials, electrolyte solutions, separators, packaging materials and lithium-ion cells.”[1] Targray claims to be an “international leader in the sourcing, transportation, storage, financing, distribution and supply of specialty materials and supply chain solutions for the Biofuels, Solar PV and Battery sectors.”[2] Targray states that it works with “battery manufacturers and researchers through every stage of the product development cycle, from early innovation to large-scale production.”[3]

25. On information and belief, Targray is aware of Celgard and its products, including Celgard’s separator products.

26. Targray offers for sale ceramic coated lithium-ion battery separators, including but not limited to those sold under the model numbers SH416W14, SH416W22, SH216D14,

---

[1] https://www.targray.com/ (last accessed April 5, 2019), attached as **Exhibit G**.
[2] *Id.*
[3] *Id.*

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

SH216D22, SW312F (SH716W14, SH716W22), SW316E (SH220W14, SH220W22), SW320H (SH624W14, SH624W22), SH816D14, SH816D22, SH216Z14, SH216Z22, SH220D14, SH220D22, SH620D14, SH620T14, SH320Z14, SH224D14, SH224D22, SH624D14, SH624Z14, SH229D14, and SH229D22. These and other battery separators are available for purchase through Targray's customer service contacts and are advertised on Targray's website.

27. Targray offers for sale uncoated polypropylene lithium-ion battery separators, including but not limited to those sold under the model numbers SD216101, SD216001, SD216201, SD220001, SD220101, SD220201, SD425201, SD425301, SD425401, SD432101, SD432201, SD432301, SD440201, SD440301, SD212202, SD214202, SD216102, SD216202, SD220102, SD220202, SD425202 and SD460201. These and other battery separators are available for purchase through Targray's customer service contacts and are advertised on Targray's website.

28. Targray states that "[t]he latest addition to Targray's line of battery separators, our ceramic separators delivers an exceptional combination of safety, temperature performance and life cycle for lithium-ion battery manufacturers and R&D facilities. Given their rigorous safety and performance features, our ceramic separators are ideally suited for advanced li-ion battery applications, namely electric vehicles and energy storage systems."[4]

29. Targray's SH416W14 and SH416W22 separators are ceramic-coated wet process polyethylene separators, which Targray explains "are also available with aluminum oxide ceramic coating to further enhance safety characteristics."[5]

30. Targray's SH216D14 and SH216D22 separators are "ceramic-coated dry process ceramic separators," which Targray explains "are also available with aluminum oxide ceramic coating to further enhance safety characteristics."[6]

31. Targray's SH416W22 and SH216D22 are the double-side coated versions of SH416W14 and SH216D14, respectively.

---

[4] https://www.targray.com/li-ion-battery/separators/ceramic-separators (last accessed April 5, 2019), attached as **Exhibit H**.
[5] "High-performance Separators," Targray—Battery Division, attached as **Exhibit I**, at 6.
[6] *Id.*

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

32. At least Targray's SH416W14, SH416W22, SH216D14, and SH216D22 separators[7] infringe Claim 12 of the '586 patent. Claim 12 of the '586 patent recites:

> A separator for an energy storage system comprises:
>
> at least one ceramic composite layer or coating, said layer including a mixture of 20-95% by weight of inorganic particles selected from the group consisting of $SiO_2$, $Al_2O_3$, $CaCO_3$, $TiO_2$, $SiS_2$, $SiPO_4$, and mixtures thereof, and 5-80% by weight of a matrix material selected from the group consisting of polyethylene oxide, polyvinylidene fluoride, polytetrafluoroethylene, copolymers of the foregoing, and mixtures thereof, said layer being adapted to at least block dendrite growth and to prevent electronic shorting; and
>
> at least one polyolefinic microporous layer having a porosity in the range of 20-80%, an average pore size in the range of 0.02 to 2 microns, and a Gurley Number in the range of 15 to 150 sec, said layer being adapted to block ionic flow between an anode and a cathode.

33. The above-identified Targray ceramic coated separators comprise a ceramic composite layer or coating composed of inorganic particles of the nature and weight percentage (or the equivalent thereto) set forth in Claim 12 of the '586 patent. Targray represents that its ceramic coated separator products have an "aluminum oxide ceramic coating to further enhance safety characteristics."[8]

34. The above-identified Targray ceramic coated separators comprise a ceramic composite layer or coating composed of a matrix material of the nature and weight percentage (or the equivalent thereto) set forth in Claim 12 of the '586 patent.

35. The above-identified Targray ceramic coated separators comprise a ceramic composite layer that is "adapted to at least block dendrite growth and prevent electronic shorting," as set forth in Claim 12 of the '586 patent. On its website, Targray acknowledges that its "battery separators must be able to withstand penetration and branching moss-like crystalline minerals in order to prevent the contamination of electrodes. If the separator material is compromised, the performance of the high-power cell declines."[9]

---

[7] Further investigation may reveal that other Targray ceramic coated separators also directly or indirectly infringe Claim 12 of the '586 patent, and that other Targray coated or uncoated separators also directly or indirectly infringe Claim 12 of the '586 patent.

[8] *Id.*

[9] https://www.targray.com/li-ion-battery/separators (last accessed April 9, 2019), attached hereto as **Exhibit J**.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

36. The above-identified Targray ceramic coated separators comprise a polyolefinic microporous layer having porosity, average pore size, and Gurley Number measurements within the ranges (or the equivalents thereto) set forth in Claim 12 of the ’586 patent.

37. The above-identified Targray ceramic coated separators comprise a polyolefinic microporous layer that is “adapted to block ionic flow between an anode and a cathode,” as set forth in Claim 12 of the ’586 patent.

38. Further, at least Targray’s SD216101, SD216001, SD216201 SH216D14, and SH216D22 separators[10] infringe at least Claim 17 of the ’867 patent. Claim 17 of the ’867 patent recites:

> A battery separator with improved pin removal properties comprising: a microporous membrane having a polypropylene surface portion including at least 50 ppm of a metallic stearate.

39. The above-identified Targray separators comprise a microporous membrane having a polypropylene surface portion including at least 50 ppm of a metallic stearate.

## FIRST CLAIM FOR RELIEF

### Infringement of the ’586 patent

40. Celgard realleges each and every allegation set forth in Paragraphs 1 through 39 and incorporates them here by reference.

41. Celgard is the owner by assignment of all rights, title, and interest in and to the ’586 patent.

42. Claim 12 of the ’586 patent is valid and enforceable.

43. Upon information and belief, and in violation of 35 U.S.C. § 271(a), Targray has infringed and continues to directly infringe Claim 12 of the ’586 patent by making, using, offering for sale, selling, and/or importing in or into the United States ceramic coated separators covered by Claim 12 of the ’586 patent, including but not limited to at least Targray’s ceramic coated separators identified above by model number.

[10] Further investigation may reveal that other Targray ceramic coated separators also directly or indirectly infringe Claim 17 of the ’867 patent, and that other Targray coated or uncoated separators also directly or indirectly infringe Claim 17 of the ’867 patent.

44. Targray has had actual knowledge of the ’586 patent at least as of the filing of Celgard’s Original Complaint (Dkt. No. 1). Targray’s continued infringement on or after this date is in spite of the objectively high likelihood that its activities constitute infringement of a valid patent, and this risk was either known or so obvious that it should have been known to Targray. Thus, Targray’s continued infringement at least as of the filing of this First Amended Complaint is willful and deliberate.

45. On information and belief, a reasonable opportunity for further investigation or discovery will show that Targray had actual knowledge of the ’586 patent before the filing of the Original Complaint (Dkt. No. 1) and continued its infringement in spite of the objectively high likelihood that its activities constituted infringement of a valid patent. Celgard’s ownership and previous enforcement of the ’586 patent is well known in the battery and battery materials industry. Further, Celgard and Targray are competitors in the battery separator market.

46. Celgard has suffered and continues to suffer damages and irreparable harm as a result of Targray’s past and ongoing infringement. Unless and until Targray’s infringement is enjoined, Celgard will continue to be damaged and irreparably harmed.

47. Celgard is entitled to all remedies at law and equity, including, but not limited to, an injunction against Targray’s infringement of the ’586 patent pursuant to 35 U.S.C. § 283.

48. Celgard is entitled to damages for Targray’s infringement of the ’586 patent, including, but not limited to, damages pursuant to 35 U.S.C. §§ 284, 285.

**SECOND CLAIM FOR RELIEF**

**Infringement of the ’867 patent (35 U.S.C. § 271(a))**

49. Celgard realleges each and every allegation set forth in Paragraphs 1 through 48 and incorporates them here by reference.

50. Celgard is the owner by assignment of all rights, title, and interest in and to the ’867 patent.

51. Claim 17 of the ’867 patent is valid and enforceable.

52. Upon information and belief, and in violation of 35 U.S.C. § 271(a), Targray has infringed and continues to directly infringe at least Claim 17 of the ’867 patent by making, using,

offering for sale, selling, and/or importing in or into the United States separators covered by Claim 17 of the ’867 patent, including but not limited to at least Targray’s separators identified above in ¶ 38 by model number.

53. Targray has had actual knowledge of the ’867 patent at least as of the filing of this First Amended Complaint. Targray’s continued infringement on or after this date is in spite of the objectively high likelihood that its activities constitute infringement of a valid patent, and this risk was either known or so obvious that it should have been known to Targray. Thus, Targray’s continued infringement at least as of the filing of this First Amended Complaint is willful and deliberate.

54. A reasonable opportunity for further investigation or discovery will show that Targray had actual knowledge of the ’867 patent before the filing of this First Amended Complaint and continued its infringement in spite of the objectively high likelihood that its activities constituted infringement of a valid patent.

55. Celgard has suffered and continues to suffer damages and irreparable harm as a result of Targray’s past and ongoing infringement. Unless and until Targray’s infringement is enjoined, Celgard will continue to be damaged and irreparably harmed.

56. Celgard is entitled to all remedies at law and equity, including, but not limited to, an injunction against Targray’s infringement of the ’867 patent pursuant to 35 U.S.C. § 283.

57. Celgard is entitled to damages for Targray’s infringement of the ’867 patent, including, but not limited to, damages pursuant to 35 U.S.C. §§ 284, 285.

**JURY DEMAND**

Celgard hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

**REQUEST FOR RELIEF**

Celgard respectfully asks that the Court enter judgment in its favor as follows:

A. Finding that Targray has infringed and is infringing the Asserted Patents;

B. Finding that Targray’s infringement of the Asserted Patents has been and continues to be willful;

C. Awarding Celgard damages adequate to compensate it for Targray's past and present infringement, but in no event less than a reasonable royalty;

D. Awarding an accounting and supplemental damages for those acts of infringement committed by Targray subsequent to the discovery cut-off date in this action through the date Final Judgment is entered;

E. Ordering that damages for infringement of the Asserted Patents be trebled as provided for by 35 U.S.C. § 284 for Targray's willful infringement of the Asserted Patents;

F. Finding that this case is exceptional;

G. Awarding Celgard its attorneys' fees and costs, together with prejudgment and post-judgment interest;

H. Preliminarily and permanently enjoining Targray and its parents, subsidiaries, affiliates, officers, directors, agents, servants, employees, successors and assigns, and all others in active concert or participation with any of the foregoing from any further acts of infringement, including contributing to and/or inducing infringement, of the Asserted Patents; and

I. Any further relief that this Court deems just and proper.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

DATED: July 1, 2019

**ROBINS KAPLAN LLP**

By: /s/ *Bryan J. Vogel*
Bryan J. Vogel (*pro hac vice*)
BVogel@RobinsKaplan.com
Danielle Rosenthal (*pro hac vice*)
Drosenthal@RobinsKaplan.com
Miles Finn (*pro hac vice*)
Mfinn@RobinsKaplan.com
**ROBINS KAPLAN LLP**
399 Park Avenue, Suite 3600
New York, NY 10022-4690
Tel.: (212) 980-7400
Fax: (212) 980-7499

Cyrus A. Morton (*pro hac vice*)
CMorton@RobinsKaplan.com
William E. Manske (*pro hac vice*)
WManske@RobinsKaplan.com
Emily J. Tremblay (*pro hac vice*)
ETremblay@RobinsKaplan.com
Maximilian F. Hall (*pro hac vice*)
MHall@RobinsKaplan.com
**ROBINS KAPLAN LLP**
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Tel.: (612) 349-8500
Fax: (612) 339-4181

Li Zhu (Bar No. 302210)
LZhu@RobinsKaplan.com
**ROBINS KAPLAN LLP**
2440 W El Camino Real, Suite 100
Mountain View, CA 94040
Tel.: (650) 784-4040
Fax: (650) 784-4041

**ATTORNEYS FOR PLAINTIFF CELGARD, LLC**